UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICIA A. McCOLM,

    Plaintiff,

    v.

A. KHALID ANBER, et al.,

    Defendants.
_____/

No. C 06-7369 PJH

**ORDER DISMISSING COMPLAINT AND DENYING REQUEST TO PROCEED IN FORMA PAUPERIS**

    Pro se plaintiff Patricia A. McColm filed this action on November 30, 2006, and also filed an application for leave to proceed in forma pauperis (IFP). Because the court finds that the complaint must be dismissed under 28 U.S.C. § 1915(e)(2), the request for leave to proceed IFP is DENIED.

**BACKGROUND**

    Plaintiff is a resident of San Francisco who receives disability benefits through the federal Supplemental Security Income (SSI) program. She also receives housing assistance through Section 8 of the United States Housing Act of 1937, 42 US.C. § 1437, et seq., under which she occupies a rental unit at a property known as "BayCrest."

    Named as defendants are A. Khalid Anber, alleged to be the owner of real property located at 201 Harrison Street in San Francisco (presumably the "BayCrest" property); Nadia Anber, alleged to be the agent of, and also the mother of, A. Khalid Anber; BayCrest Towers Residential Condominium Association ("BayCrest"), alleged to be a California corporation; the Board of Directors for BayCrest; BayCrest Apartments, alleged to be a subsidiary of BayCrest; Andrew Phipps Brooks, alleged to be the general manager of

BayCrest; Cynthia Fine, alleged to be the assistant general manager of BayCrest; Lynn Riser (Unit 101), alleged to be a resident of San Francisco; Eric Yee (Unit 200), alleged to be a resident of San Francisco; Lori Nelson (Unit 114), alleged to be a resident of San Francisco; Anthony Caballero (Unit 114), alleged to be a resident of San Francisco; two Does identified as "Door Kicker" and "Assault Perpetrator," both alleged to be residents of San Francisco; and Does 3-950, who are not identified in any way.

Plaintiff alleges that she made a request for disabled parking on July 7, 2002, and that following that request, all defendants conspired to discriminate against her based on her disability, to deny her reasonable accommodations because of her disability, to retaliate against her for her requests for accommodation, to injure her physically and mentally, and to deprive her of her civil rights, public benefits, and residence.  She claims that the conspiracy was designed to interfere with her quiet and peaceable possession and enjoyment of the rental premises, and to force her to abandon her lease and the public benefits pertaining thereto and to vacate the premises.

Plaintiff claims that all defendants, acting together, performed these acts.  The acts about which plaintiff complains fall into three general categories: 1) acts constituting failure to accommodate her disability; 2) acts constituting failure to maintain the rental premises in a clean, safe, and orderly condition; and 3) acts that she considers harassment.

With regard to the first category, plaintiff claims that defendants failed to accommodate her disability by providing accessible parking; refused to remove able-bodied persons from designated disability parking zones; removed disabled parking; attempted to force her into a dangerous parking stall that was not accessible to persons with disabilities; refused to agree to her requests for accommodations regarding pest, noise, and air pollution problems; refused to provide a requested van-accessible parking space; and failed to provide wheelchair access.

With regard to the second category, plaintiff asserts that defendants refused to clean the carpet and floor following water damage from a broken pipe; refused to correct repetitive flooding into plaintiff's unit from Unit 200; refused to treat the pest problem;

refused to control loud talking and groups of "loud party people" immediately adjacent to the walls of plaintiff's unit; and refused to control verbal and physical "third party abuses" directed toward plaintiff, including assault and defamatory comments.

With regard to the third category, plaintiff alleges that defendants vandalized her mailbox "with improper words;" vandalized her vehicle on numerous occasions; installed smoking bins and chairs adjacent to plaintiff's unit (knowing that plaintiff's asthma was aggravated by second-hand smoke); smoked on plaintiff's patio, in front of her sliding glass door; dumped trays of cigarette butts onto plaintiff's patio; threw cigarettes from the windows of the unit above plaintiff's unit, into the areas in front of plaintiff's air vents; installed strong lights in front of the windows where plaintiff was sleeping; pounded violently on plaintiff's walls and door late at night; stomped and created general foot-traffic noise on the tile floors outside plaintiff's bedroom; and allowed dogs to bark.

Plaintiff also asserts that building management unlawfully entered her unit on at least three occasions, and that the building's general manager told her that he did not care about her needs as a person with a disability, and demanded that she move on several occasions.

Plaintiff alleges discrimination on the basis of disability and denial of reasonable accommodation, in violation of the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601-19 and the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; interference, coercion, or intimidation, in violation of the ADA, 42 U.S.C. § 12203(a); violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),18 U.S.C. § 1961; interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951 ("Hobbs Act"); violation of 42 U.S.C. § 1983; and conspiracy.  She also asserts various state law claims, including negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, breach of contract, defamation, harassment, interference with civil rights, and violation of unspecified "California fair housing laws," as well as violations of the San Francisco Police Code.

**DISCUSSION**

A.  Legal Standard

The court may authorize a plaintiff to file an action in federal court without prepayment of fees or security if the plaintiff submits an affidavit showing that he or she is unable to pay such fees or give security therefor.  28 U.S.C. § 1915(a).  When a complaint is filed in forma pauperis, it must be dismissed prior to service of process if it is frivolous or malicious, fails to state a claim, or seeks monetary damages from defendants who are immune from suit.  See 28 U.S.C. § 1915(e)(2); see also Franklin v. Murphy, 745 F.2d 1221, 1226-27 (9th Cir. 1984).  When a complaint is dismissed under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment.  See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissal of complaint as frivolous).

A complaint is frivolous for purposes of § 1915(e) if it lacks any arguable basis in fact or in law.  Neitzke v. Williams, 490 U.S. 319, 328-30 (1989).  A complaint lacks an arguable basis in law only if controlling authority requires a finding that the facts alleged fail to establish an arguable legal claim.  Guti v. INS, 908 F.2d 495, 496 (9th Cir. 1990).  While the facts alleged in the complaint should generally be accepted as true for purposes of entering judgment on the pleadings, clearly baseless factual contentions may be dismissed as frivolous under § 1915.  Denton v. Hernandez, 504 U.S. 25, 32 (1992).

B.  Analysis

Under Federal Rule of Civil Procedure 8, a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Under this federal "notice pleading" standard, a plaintiff is required to include in a complaint "sufficient allegations to put defendants fairly on notice of the claims against them."  McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

As an initial matter, the court finds that the complaint must be dismissed because it fails to put each defendant on notice of the claim or claims asserted against him/her/it.

First, plaintiff does not allege any specific claim against any specific defendant, and instead attempts to sweep all defendants into the lawsuit under vague assertions of "conspiracy." However, for reasons explained below, plaintiff has not stated a claim of "conspiracy."

Moreover, despite the broadly-worded assertions of the complaint, it is obvious that not all claims can be asserted against all defendants. For example, defendants who are simply residents – not owners or managers – of the Baycrest building in which plaintiff lives are not in a position to accommodate plaintiff's disability. Thus, those defendants cannot be held liable for any failure to accommodate.

Second, in addition to failing to put each defendant on notice regarding which claim or claims are being asserted against him/her/it, plaintiff in most cases fails to allege facts supporting each separate cause of action. Thus, plaintiff has not stated a claim as to any cause of action.

1.   FHAA Claim

Plaintiff alleges discrimination and denial of reasonable accommodation, in violation of the FHAA. The FHAA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of – (A) that buyer or renter." The statute further provides that "discrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); see Giebeler v. M & B Assocs., 343 F.3d 1143, 1146-47 (9th Cir. 2003).

In order to state a discrimination claim under the FHAA for failure to reasonably accommodate, plaintiff must allege that (1) she suffers from a handicap as defined by the FHAA, (2) that the defendant or defendants "knew or reasonably should have known of" plaintiff's handicap; (3) that "accommodation of the handicap 'may be necessary' to afford [plaintiff] an equal opportunity to use and enjoy [her] dwelling;" and (4) that the defendant or defendants "refused to make such accommodation." Giebeler, 343 F.3d at 1147, cited in McGary v. City of Portland, 386 F.3d 1259, 1262 (9th Cir. 2004).

Here, plaintiff alleges that she suffers from a covered disability, and that the defendants were aware of her disability. She also alleges that all defendants failed to reasonably accommodate her disability, by failing to accommodate her request for accessible parking. She does not allege that the requested accommodation was necessary to afford her an equal opportunity to use and enjoy her dwelling.

Plaintiff asserts that she made her first request for disability parking on July 7, 2002, and that after that time, defendants "conspired and agreed among themselves" to discriminate against her, to deny her the reasonable accommodations she had requested, and to refuse to correct the noise and maintenance problems. She alleges that the "last major overt act in pursuance of [this] conspiracy occurred on or about August 16, 2006, from door pounding and vehicle vandalism incident on or about June 2006."

A plaintiff must file a FHAA complaint within two years after the "occurrence or termination of an alleged discriminatory housing practice . . . whichever occurs last." 42 U.S.C. § 3613(a)(1)(A). Discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely-filed claims. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002).

Morgan involved Title VII of the Civil Rights Act of 1964. However, the Ninth Circuit has concluded that the Supreme Court's analysis of the continuing violations doctrine is not limited to Title VII actions, but rather applies with equal force to cases brought under the Rehabilitation Act and other civil rights laws. See Cherosky v. Henderson, 330 F.3d 1243, 1246 n.3 (9th Cir. 2003). Under this analysis, each incident of discrimination constitutes a separate actionable employment practice. Id. at 1247 (citing discussion of Morgan in Lyons v. England, 307 F.3d 1092, 1107 (9th Cir. 2002)). A continuing violation is not present where the alleged injury is simply a subsequent effect resulting from a prior discriminatory act. See United Air Lines v. Evans, 431 U.S. 553, 556-57 (1977).

Plaintiff filed this action on November 30, 2006. Although the Ninth Circuit has not specifically ruled on this question with regard to claims under the FHAA, it held in Cherosky – a Rehabilitation Act case – that the rejection of a proposed accommodation for a disability

6

constituted a "discrete act," and that the rejection of a proposed accommodation does not give rise to a continuing violation. Cherosky, 330 F.3d at 1247-48 (citing Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134-35 (2d Cir. 2003)). Thus, in the present case, to the extent that plaintiff's claim of failure to accommodate is based on requests for accommodation made and refused prior to November 30, 2004, such claim is time-barred.

The only dates plaintiff mentions in the complaint are July 2002, when she claims that her request for accessible parking was denied; and June 2006 and August 16, 2006, when she claims there were incidents of "vehicle vandalism" and "door pounding." However, those two last-mentioned incidents are unrelated to the request for accessible parking, and the July 2002 denial of the requested accommodation cannot provide the basis for a claim of discrimination because it pre-dates November 30, 2004. In order to state an actionable claim of failure to accommodate, plaintiff must plead facts showing that she requested disabled parking on or after November 30, 2004, and that her request was denied.

Similarly, to the extent that plaintiff intends to assert any other claim of disability discrimination under the FHAA, she must plead facts showing that the act or acts underlying her claim occurred on or after November 30, 2004.

   2.  Americans with Disabilities Act Claims

Plaintiff alleges discrimination and retaliation under the ADA. The ADA prohibits discrimination against individuals with disabilities. 42 U.S.C. § 12101, et seq. Title I of the ADA prohibits discrimination in employment. 42 U.S.C. §§ 12111, et seq. Title II prohibits discrimination in the provision of services and programs by a public entity, and the provision of transportation to the general public. 42 U.S.C. §§ 12131, et seq. Title III prohibits discrimination in public accommodations. 42 U.S.C. §§ 12181, et seq.

The complaint does not specify the section of the ADA under which plaintiff asserts her discrimination claim. However, it appears to the court that the ADA provides no viable cause of action under the facts alleged. Plaintiff is not claiming discrimination in employment or in the provision of public services or public transportation, and Titles I and II

7

therefore do not apply. Nor does Title III apply, because residential portions of housing developments do not fall within the bounds of the ADA. See Indep. Housing Servs of San Francisco v. Fillmore Ctr. Assocs., 840 F.Supp. 1328, 1344 (N.D. Cal. 1993) (legislative history of ADA clarifies that residential facilities such as apartments and condominiums do not constitute "public accommodations" within the meaning of the Act).

In addition, because plaintiff cannot allege a claim of discrimination under the ADA, she cannot assert a claim of retaliation because she has "opposed any act or practice made unlawful" by the ADA, 42 U.S.C. § 12203(a); or a claim of interference, coercion, or intimidation in the "exercise or enjoyment of, or on account of . . . having exercised or enjoyed . . . any right granted or protected" by the ADA, id. § 12203(b). Thus, all claims alleged under the ADA must be dismissed.

3. RICO

Plaintiff asserts a claim under RICO, 18 U.S.C. § 1961, et seq. The elements of a civil RICO claim under 18 U.S.C. § 1962(c) are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' "business or property." Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001); see also Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). In order to state a claim under RICO, a plaintiff must allege that one or more defendant "persons" conducted or participated in the affairs of an "enterprise" through a "pattern of racketeering activity." 18 U.S.C. § 1962(c). The court finds that the RICO claim must be dismissed because plaintiff alleges no facts supporting the elements of the claim.

A "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise" includes either (1) "any individual, partnership, corporation, association, or other legal entity," or (2) "any union or group of individuals associated in fact although not a legal entity ('associated-in-fact')." 18 U.S.C. § 1961(4).

A single individual or entity cannot be both the RICO enterprise and an individual RICO defendant. River City Mkts, Inc. v. Fleming Foods West, Inc., 960 F.2d 1458, 1461

8

(9th Cir. 1992). Thus, individual defendants cannot be the enterprise. This is because an individual cannot associate or conspire with himself or herself. Rae v. Union Bank, 725 F.2d 478, 480 (9th Cir.1984). Furthermore, for purposes of a single action, a single corporate defendant cannot be both the RICO person and the RICO enterprise under section 1962(c). Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1533-34 (9th Cir. 1992).

An "association-in-fact" enterprise consisting of a group of individuals requires some sort of structure, and cannot simply consist of a group of people who get together and commit to a pattern of racketeering activity. Jennings v. Emry, 910 F.2d 1434, 1440-41 (7th Cir. 1990); see also Chang v. Chen, 80 F.3d 1293, 1299 (9th Cir. 1996) (for an entity to constitute an enterprise, "[a]t a minimum . . . [the] entity must exhibit some sort of structure . . . for the making of decisions, whether it be hierarchical or consensual"). Furthermore, the structure must provide a mechanism for controlling and directing the affairs of the group "on an ongoing, rather than an ad hoc, basis." Id.

Here, plaintiff has not identified the "enterprise," the "persons" involved, or the predicate acts of racketeering activity. She has neither described any sort of independent structure, nor demonstrated how the alleged enterprise is separate from the alleged racketeering acts. She appears instead to be relying on vague and conclusory allegations of "conspiracy." However, any alleged conspiracy among the individual defendants lacks the requisite structure to be considered an enterprise. Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1083 (9th Cir. 2000) (a conspiracy is not a RICO enterprise).

Nor has plaintiff identified the predicate racketeering acts. "Racketeering activity" means "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical," acts indictable under specified federal statutes, and certain offenses involving fraud. 18 U.S.C. § 1961(1). For purposes of RICO, a "pattern of racketeering activity" requires at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5).

The only possible reference to racketeering activity that the court can locate in the complaint is plaintiff's assertion of a violation of the Hobbs Act. The Hobbs Act criminalizes

robbery, extortion, and physical violence, or any plan or scheme to commit those acts, which affects interstate commerce. 18 U.S.C. § 1851.  "Extortion" is defined in the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  Id. § 1951(b)(2).  "Robbery" is defined as

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

Id. § 1951(b)(1).  Thus, the definitions of "robbery" and "extortion" under the Hobbs Act each require that the perpetrator obtain property from another.

A Hobbs Act violation can serve as the predicate for a civil action under the RICO Act.  18 U.S.C. § 1961(1)(B) (definition of "racketeering activity" includes "any act which is indictable under [18 U.S.C. § 1951]"), § 1964(c) (providing civil cause of action for any person injured in his business or property by a violation of the RICO Act); see Sosa v. DirecTV, Inc., 437 F.3d 923, 939 (9th Cir. 2006).  Unlike RICO, however, the Hobbs Act does not provide a civil counterpart to any criminal offense, nor can one be implied from the legislative language.  See Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402 (8th Cir. 1999); John's Insulation, Inc. v.. Siska Const. Co., Inc., 774 F.Supp. 156 (S.D.N.Y. 1991).  As a result, plaintiff has no private right to assert a separate cause of action for violation of the Hobbs Act.

Moreover, even if a right to sue under the act did exist, the plaintiff does not allege a single fact supporting her allegation of a violation.  While she alleges a litany of complaints about defendants as a group, she does not plead any facts showing that defendants acquired property from her as a result of "robbery" or "extortion," or as a result of threatened or actual "physical violence," pursuant to a plan or purpose that affects interstate commerce through robbery or extortion.  See Scheidler v. Nat'l Organization for Women, Inc., 126 S.Ct. 1264, 1268-69 (2006).  Accordingly, plaintiff has not pled a claim

1  under the Hobbs Act, and this claim cannot serve as a predicate for the RICO Act claim.

2  Plaintiff's failure to plead facts showing the essential element of existence of an
3  enterprise or the other required elements, including the necessary predicate acts, is fatal to
4  her claim.  The RICO claim must be dismissed.

5         4.       Claim under 42 U.S.C. § 1983

6  Plaintiff alleges a claim under 42 U.S.C. § 1983.  Section 1983 "provides a cause of
7  action for the 'deprivation of any rights, privileges, or immunities secured by the
8  Constitution and laws' of the United States."  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498,
9  508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive
10 rights, but merely provides a method for vindicating federal rights elsewhere conferred.
11 See Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To state a claim under § 1983, a
12 plaintiff must allege two essential elements: (1) that a right secured by the Constitution or
13 laws of the United States was violated and (2) that the alleged violation was committed by a
14 person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988);
15 Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

16 In addition, an alleged violation of federal law may not be vindicated under § 1983
17 where "(1) the statute does not create an enforceable right, privilege, or immunity, or
18 (2) Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or
19 implicitly by imbuing it with its own comprehensive remedial scheme."  Buckley v. City of
20 Redding, 66 F.3d 188, 190 (9th Cir. 1995).  A comprehensive scheme for the enforcement
21 of a statutory right creates a presumption that Congress intended to foreclose resort to
22 more general remedial schemes to vindicate that right.  Middlesex Co. Sewerage Auth. v.
23 Nat'l Sea Clammers Ass'n, 453 U.S. 1, 20 (1981).

24 Here, the complaint does not identify the statutory or constitutional right that is the
25 basis for plaintiff's § 1983 claim, and does not allege the other required elements.
26 Accordingly, the § 1983 claim must be dismissed for failure to state a claim.  As none of the
27 defendants are state actors, however, it is unlikely that plaintiff can plead a viable claim.
28 Moreover, to the extent that she intends to base the claim on the alleged violation of the

1  FHAA Act, the court finds that such a claim is foreclosed by the rule stated in Buckley.

     5.    Conspiracy Claim

     Plaintiff alleges throughout the statement of facts that defendants all conspired to do the acts complained of. As an initial matter, however, the court notes that civil conspiracy is not a separate and distinct cause of action under California law. Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1228 (9th Cir. 1997). Therefore, to the extent that plaintiff intends to assert conspiracy as a claim against the defendants, the court dismisses the claim against all defendants with prejudice because plaintiff cannot plead conspiracy as an independent cause of action. See id.

     Conspiracy is a doctrine that "imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-511 (1994). To allege conspiracy, the plaintiff must plead facts showing the formation and operation of a conspiracy and damage resulting from an act or acts done in furtherance of the plan. Mox, Inc. v. Woods, 202 Cal. 675, 677 (1927). "As the cause of action is for the damage suffered, and not the mere conspiracy, the complaint must state facts which show that a civil wrong was done resulting in damage." Orloff v. Metropolitan Trust Co., 17 Cal. 2d 484, 488 (1941).

     Here, plaintiff has not alleged the formation of any conspiracy or any action on the part of any person that corresponds to the elements of a conspiracy claim. Accordingly, this claim is dismissed, because it does not properly put the defendants on notice of the conspiracy claims with which they are charged. To successfully plead the existence of a conspiracy, plaintiff must more clearly allege specific action on the part of each defendant that corresponds to the elements of a conspiracy claim. See Mox, 202 Cal. at 677. Such amended allegations, however, must be made within the sections of the complaint that contain plaintiff's claims for the underlying torts.

     6.    Assault Claim

     Plaintiff alleges a claim of assault. "Assault" is generally defined as "a

12

demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." Lowry v. Standard Oil Co. of Cal., 63 Cal. App. 2d 1, 5-6 (1944). The California Civil Code does not define "assault," but rather incorporates the definition that appears in the California Penal Code. Under that definition, "assault" is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240. Because plaintiff pleads no facts supporting the elements of a cause of action for civil assault, this claim must be dismissed.

### 7. Vandalism Claim

Plaintiff alleges a claim of "vandalism." Under the California Penal Code, "vandalism" is defined as the malicious defacing, damaging, or destruction of real or personal property belonging to another. Cal. Penal Code § 594; see In re Leanna W., 120 Cal. App. 4th 735, 743 (2004). Because plaintiff pleads no facts supporting the elements of a cause of action for vandalism (which, in any event, is a criminal offense, not a civil cause of action), this claim must be dismissed.

### 8. Negligence Clam

Plaintiff alleges a claim of negligence. To state a claim for negligence, a plaintiff must plead the following elements: (1) defendant's legal duty of care; (2) defendant's breach of duty (i.e., the negligent act or omission); (3) that the breach was a proximate or legal cause of her injury (i.e., causation); and (4) damages. Ann M. v. Pacific Plaza Shopping Center, 6 Cal. 4th 666, 673 (1993); see 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 537. Because plaintiff alleges no facts supporting a claim of negligence, this cause of action must be dismissed.

### 9. Claim of Intentional Infliction of Emotional Distress

Plaintiff asserts a claim of intentional infliction of emotional distress. The elements of a claim for intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

1  the defendant's outrageous conduct. Cervantes v. J.C. Penney Co., 24 Cal. 3d 579, 593
2  (1979); see also Christensen v. Superior Court, 54 Cal. 3d 868, 904-05 (1991).

3  While the outrageousness of a defendant's conduct normally presents an issue of
4  fact to be determined by the trier of fact, the court may determine, in the first instance,
5  whether the defendant's conduct may reasonably be regarded as so extreme and
6  outrageous as to permit recovery. Trerice v. Blue Cross of California, 209 Cal. App. 3d
7  878, 883 (1989). Behavior may be considered outrageous if a defendant: (1) abuses a
8  relation or position which gives him power to damage the plaintiff's interest; (2) knows the
9  plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or
10 unreasonably with the recognition that the acts are likely to result in illness through mental
11 distress. Kiseskey v. Carpenters' Trust for So. California, 144 Cal. App. 3d 222 (1983).

12 Here, although inarticulately pled, plaintiffs' claims appear to be premised on:
13 (1) being repeatedly deprived of the "peaceful and quiet enjoyment" of her property; and
14 (2) being denied an accessible parking space. The court finds that the claim of intentional
15 infliction of emotional distress must be dismissed because plaintiff fails to plead facts
16 showing that she suffered the requisite level of emotional distress. Severe emotional
17 distress means "emotional distress of such substantial quantity or enduring quality that no
18 reasonable [person] in a civilized society should be expected to endure it." Id. at 231;
19 Butler-Rupp v. Lourdeaux, 134 Cal. App. 4th 1220, 1226 (2005).

20 The law is clear that a mere momentary or transitory emotional distress is insufficient
21 to constitute severe emotional distress. Kiseskey, 144 Cal. App. 3d at 231. In essence,
22 here, plaintiff merely alleges – in conclusory fashion – that she suffered some distress
23 because of the alleged harassment and other acts complained of. There are no allegations
24 supporting the inference that the resulting distress was of such severity that "no reasonable
25 [person] in a civilized society should be expected to endure it."

26     10.    Claim of Negligent Infliction of Emotional Distress

27 Plaintiff also alleges a claim of negligent infliction of emotional distress. In California,
28 there is no independent tort of negligent infliction of emotional distress. See Potter v.

14

Firestone Tire & Rubber Co., 6 Cal. 4th 965, 981 (1993).  Negligent infliction of emotional distress is merely a form of the tort of negligence.  Huggins v. Longs Drug Stores California, Inc., 6 Cal. 4th 124, 129 (1993).

> The negligent causing of emotional distress is not an independent tort, but the tort of negligence.  The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law.  Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability.

Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal. 3d 583, 588 (1989) (citations and quotations omitted).

Thus, to establish a claim for negligent infliction of emotional distress, the plaintiff must set forth each of the elements of negligence, as described above: (1) duty; (2) negligent breach of duty; (3) legal cause; and (4) damages caused by the negligent breach.  Friedman v. Merck & Co., 107 Cal. App. 4th 454, 463 (2003).  "Unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty."  Gu v. BMW of North America, LLC, 132 Cal. App. 4th 195 (2005).

As plaintiff's complaint does not allege the elements of a negligence cause of action, the claim of negligent infliction of emotional distress must be dismissed.

11.     Fraud Claim

Plaintiff asserts a claim of fraud.  The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).

Generally, the Federal Rules of Civil Procedure require that a plaintiff in federal court give a short, plain statement of the claim sufficient to put the defendant on notice.  See Fed. R. Civ. P. 8(a).  However, Rule 9 imposes a particularized pleading requirement on a plaintiff alleging fraud or any claim premised on fraud.  See Fed. R. Civ. P. 9(b) (in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with

particularity").

Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-49 (9th Cir. 1994).

Because plaintiff fails to plead fraud with particularity – indeed, fails to allege any facts whatsoever in support of this claim – the court finds that the fraud claim must be dismissed.

12. Breach of Contract Claim

Plaintiff asserts a claim of breach of contract. "Under California law, the elements required to establish actionable breach of contract are the existence and terms of the contract, plaintiff's performance, defendant's breach, and damages therefrom." Amelco Elec. v. City of Thousand Oaks, 27 Cal. 4th 228, 243 (2002). Plaintiff alleges no facts in support of this claim, and it must therefore be dismissed for failure to state a claim.

13. Defamation Claim

Although it is not entirely clear from the complaint, plaintiff appears to be asserting a claim of defamation. To state a claim for defamation (libel or slander), plaintiff must allege "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999); See Cal. Civ. Code §§ 45-46. "Publication" means "communication to a third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." Id.

In addition, the defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement. Jacobson v. Schwarzenegger, 357 F.Supp. 2d 1198, 1216 (C.D. Cal. 2004). Even under the liberal federal pleading standards, general allegations of  defamatory statements" that do not identify the substance of what was said are insufficient. Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F.Supp. 1303, 1314

(N.D. Cal. 1997) (words constituting libel or slander must be specifically identified, if not pleaded verbatim).

Here, plaintiff pleads no facts supporting the elements of a claim of defamation, and the court finds that this claim must be dismissed.

14.     Remaining Claims

In addition to the above-described claims, plaintiff asserts that she suffered from "harassment," "interference with civil rights," violations of "state fair housing laws," and violations of the "San Francisco Police Code."  The court finds these claims to be so vague and conclusory as to be subject to dismissal.

With regard to the "harassment" claim, plaintiff does not specify whether she intends to assert a claim of statutory civil harassment; a claim of harassment that might more properly be considered a claim to abate a nuisance; a claim of harassment as a form of disability discrimination; or a claim of harassment based on some other legal theory or statutory source.  Because the court cannot guess what plaintiff has in mind with regard to this claim, the claim must be dismissed.

With regard to the claim of "interference with civil rights," plaintiff does not specify the constitutional or statutory source of either the civil right or rights at issue, or the authority for the cause of action.  Again, because the court cannot guess what plaintiff has in mind with regard to this claim, it must be dismissed.

With regard to the claim of violations of "state fair housing laws" and the "San Francisco Police Code," the court is again uncertain as to which state statutes or municipal code provisions plaintiff is referring to.  Accordingly, these claims must be dismissed.

**CONCLUSION**

In accordance with the foregoing, the complaint is DISMISSED in its entirety.  The dismissal is with LEAVE TO AMEND.  In any amended complaint, plaintiff must allege separate, numbered causes of action; must state a specific constitutional or statutory basis for each separate cause of action; must allege facts supporting the elements of each separate cause of action, including the dates of the alleged wrongful acts; must allege facts

showing each defendant's personal involvement in the wrongful act alleged in each cause of action; and must allege the resulting harm or injury.

Any amended complaint must be filed no later than January 20, 2006. If the amended complaint is not filed by that deadline, the court will dismiss the action.

**IT IS SO ORDERED.**

Dated: December 12, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge